UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TECHNICAL LED INTELLECTUAL PROPERTY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BVGA MIPOW (USA) CO., LTD,<br><br>Defendant. | Case No. 19-cv-00393-JCS<br><br>**REPORT AND RECOMMENDATION REGARDING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 19 |

## I. INTRODUCTION

Plaintiff Technical LED Intellectual Property, LLC ("Technical LED") brought this action alleging that Defendant BVGA Mipow (USA) Co., Ltd. ("Mipow") infringed a patent assigned to Technical LED for a light source incorporating both light-emitting diodes ("LEDs") that emit white light and LEDs that emit light of other colors, with the various colors of light mixing in an optical cavity. The Clerk entered Mipow's default after Mipow failed to answer or otherwise respond to the complaint, and Technical LED now moves for default judgment. The undersigned held a hearing on August 9, 2019, and Technical LED submitted supplemental materials in early 2020. For the reasons discussed below, the undersigned recommends that the motion be GRANTED IN PART and DENIED IN PART, and that a judgment of $88,352.73 be entered.

Because not all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c), this case will be reassigned to a United States district judge for all further proceedings, including action on the recommendations of this report. Any party may file objections to these recommendations no later than fourteen days from the date of this report.

## II. BACKGROUND

### A. Allegations of the Complaint

Technical LED is the assignee of U.S. Patent No. RE41,685 (the "'685 patent"), which was reissued on September 14, 2010 based on an application originally filed December 28, 1999. Compl. (dkt. 1) ¶ 6 & Ex. A ('685 patent). Technical LED alleges that Mipow infringes the '685 patent through sale of "products . . . including its playbulb smart lights and similar assemblies," and attaches charts comparing the internal systems of two Mipow products (the "E26 Bluetooth Smart LED Light Bulb" and the "BTL-400-BK Playbulb") to the tenth through fourteenth claims of the '685 patent. *Id.* ¶ 7 & Exs. B, C. Those claims read as follows:

> 10. A light source comprising:
>
> an optical cavity;
>
> a plurality of first light-emitting diodes each of which is a phosphor light-emitting diode that emits white light, each first light-emitting diode comprising a diode encased in a light-transmitting package;
>
> a plurality of second light-emitting diodes each of which emits non-white light, each second light-emitting diode comprising a diode encased in a light-transmitting package;
>
> wherein the first and second light-emitting diodes are arranged to emit light into the optical cavity such that mixing of spectral outputs from the first and second light-emitting diodes occurs in the optical cavity.
>
> 11. A light source of claim 10, further comprising at least one third light-emitting diode having a spectral output different from those of the first and second light-emitting diodes.
>
> 12. A light source of claim 11, wherein the spectral output of the second light-emitting diodes is a red output.
>
> 13. A light source of claim 11, wherein the spectral output of the third light-emitting diode is a green output.
>
> 14. A light source of claim 13, further comprising at least one fourth light-emitting diode having a blue output.

*Id.* Ex. A at 8:43–67.

Technical LED's complaint seeks a judgment of willful infringement, a permanent injunction barring Mipow and its agents and associates from infringing the '685 patent, damages, "and an accounting of ongoing post-judgment infringement," as well as any other relief to which it

2

may show it is entitled. Compl. at 4 (prayer for relief).

### B. Procedural History

Technical LED filed its complaint on January 22, 2019. *See id.* The Clerk issued summons on January 25, 2019. Summons (dkt. 6). On February 7, 2019, a process server served Mipow by leaving summons, the complaint, and other documents with the person apparently in charge at Mipow's principal place of business in Milpitas, California, whom the process server described as "(JOHN DOE)" and "ASIAN MALE 30YRS 6'3" 420LBS. BLACK HAIR." Proof of Service (dkt. 8) at 1. A process server mailed the same documents to Mipow the following day. *Id.* at 2. Technical LED applied for entry of default on April 5, 2019 (dkt. 9), and the Clerk entered Mipow's default on April 8, 2019 (dkt. 10).

After Technical LED failed to appear for the initial case management conference on April 29, 2019, the undersigned issued an order to show cause why the case should not be dismissed for failure to prosecute. Order to Show Cause (dkt. 12). Technical LED's attorney Louis Heidelberger appeared for a case management conference and hearing on the order to show cause on May 31, 2019, and the undersigned expunged the order to show cause. Civil Minute Order (dkt. 18). Technical LED filed its present motion on June 29, 2019. *See generally* Mot. (dkt. 19). At the June case management conference and hearing on the present motion, the undersigned directed Technical LED to submit additional evidence related to its claim for damages resulting from Defendant's infringement. Plaintiff submitted a supplemental brief containing most of that information, including records of sales of the infringing products. Supp'l Br. (dkt. 28).

### C. Technical LED's Arguments and Evidence

Heidelberger states that Technical LED informed Mipow of its purported infringement and of Technical LED's intent to file this action on October 19, 2018, but that other than acknowledging receipt of Technical LED's letter, Mipow did not provide a substantive response before Technical LED filed its complaint. Heidelberger Decl. (dkt. 19-1) ¶¶ 3–4 & Ex. A (correspondence between Heidelberger and Mipow employee Sam Yang). The purportedly infringing products have continued to be available for sale through at least the date of Technical LED's motion for default judgment. *Id.* ¶ 10. According to Heidelberger, Technical LED

requested Mipow's sales figures in order to prepare a settlement offer, and Mipow promised to provide them but never did so. *Id.* ¶¶ 5–6. Instead, Mipow has provided only what Heidelberger characterizes as "meager settlement offers." *Id.* ¶ 8.

Several months after the hearing, at the direction of the undersigned, Technical LED provided sales records for the infringing products from Amazon and Best Buy. Supp'l Br. Ex. 1-D ("Amazon's Initial Production of Infringing Sales re Mipow"); 1-E ("Amazon's First Supplemental Production Production of Infringing Sales re Mipow"); 1-H ("Amazon Second Supplemental Infringing Sales Production"); 1-I ("Best Buy Production Of Sales re Mipow Subpoena"). Based on those records, Technical LED concluded that, from 2013 to 2018, Mipow grossed $642,106.07 from selling products that infringed the '685 patent. Supp'l Br. Ex. 1-M. Technical LED now claims that it is entitled to $57,789.54, or 9% of that revenue. *Id*. at 10. According to Technical LED, 9% represents a reasonable royalty rate which Technical LED would have agreed to had Mipow properly licensed the technology from the '685 patent. *Id*. Technical LED contends that treble damages are appropriate because Mipow has willfully continued to sell infringing products after being placed on notice of its infringement and has failed to appear and defend this action. *See* Mot. at 13.

Technical LED also seeks a permanent injunction barring Mipow from further infringement of the '685 patent. Mot. at 13–19. Technical LED contends that an injunction is warranted because, among other reasons, damages alone would not allow it to dictate any non-monetary terms of a license for Mipow's use of the patent. *Id.* at 16–17.

Finally, Technical LED contends that it is entitled to its attorneys' fees and costs based on the Court's authority "in exceptional cases [to] award reasonable attorney fees to the prevailing party," 35 U.S.C. § 285, because Mipow willfully infringed the '685 patent and failed to defend this action. *See* Mot. at 19–22. Technical LED seeks fees at $600 per hour for thirty-one hours of Heidelberger's time and $575 per hour for twelve hours of local counsel Brandon Fernald's time, for a total of $25,500 in attorneys' fees, as well as $600 for four hours of paralegal work and $9,697.49 in taxable and non-taxable costs. *See* Mot. at 21–23. Technical LED has not provided billing records or any other breakdown of its counsel's use of their time. Technical LED also has

4

not provided documentation of its costs, although Heidelberger states that they include $568.49 for filing costs and service of process, $354 for unspecified "Fernald Law Group expenses," and $8,775 for thirteen hours of expert witness fees to determine infringement and prepare the charts comparing Mipow's products to the claims of the '685 patent. Heidelberger Decl. ¶ 33.

### III. ANALYSIS

#### A. Legal Standard

After default has been entered against a party, a district court may grant an application for default judgment in its discretion. *See* Fed. R. Civ. P. 55(b)(2). If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, it then considers several factors in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471−72 (9th Cir. 1986). In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917−18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

#### B. Jurisdiction and Service

Technical LED's patent infringement claim arises under federal law, specifically Title 35 of the United States Code. *See* Compl. ¶ 3. The Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and § 1338(a). Mipow is subject to the Court's general personal jurisdiction because its principal place of business is in California. Compl. ¶ 2; *see Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014).

Technical LED served Mipow by leaving process with a person apparently in charge at Mipow's principal place of business and mailing process to Mipow the following day. *See* Proof of Service. Under Rule 4(h)(1) of the Federal Rules of Civil Procedure, a corporation located in the United States can be served by any means authorized under state law where the district court is

5

located or where the defendant is served.  *See* Fed. R. Civ. P. 4(h)(1)(B) (citing Fed. R. Civ. P. 4(e)(1)).  The manner of service that Technical LED used here—delivery to a person apparently in charge of an office, followed by mailing—is allowed under California law.  *See* Cal. Civ. Proc. Code § 415.20(a); *Khourie, Crew & Jaeger v. Sabek, Inc.*, 220 Cal. App. 3d 1009, 1013 (1990). Service was therefore effective under Rule 4(h)(1)(B).

### C. *Eitel* Factors

Several of the *Eitel* factors weigh in favor of granting default judgment simply because Mipow has not participated in this action.  Since Mipow has failed to respond to the complaint or otherwise appear in this action, Technical LED will be left without a remedy, and therefore prejudiced, if default judgment is not granted.  The sum of money at stake is not so high as to weigh against granting judgment to the extent that any damages are supported by evidence, although the extent of such support is discussed separately below.  Mipow was properly served— moreover, a Mipow employee acknowledged receiving Technical LED's letter attaching its complaint, Heidelberger Decl. Ex. A—and there is no indication that its default is due to excusable neglect.  Mipow could conceivably dispute some of the material facts if it were to appear, but it has failed to do so.  Finally, while there is a strong public policy favoring the resolution of disputes on the merits, that is not possible in this case because Mipow has failed to appear and there is no indication that it intends to do so.

The remaining factors, "the merits of plaintiff's substantive claim" and "the sufficiency of the complaint," are intertwined where, as here, the case has not advanced beyond the pleading stage. Technical LED's complaint sufficiently identifies the patent at issue (RE41,685), Compl. ¶ 6 & Ex. A, alleges that a class of Mipow's products ("playbulb smart lights and similar type assemblies") infringe that patent, *id.* ¶ 7, specifies particular claims infringed ("claims 10 through 14"), *id.*, includes charts and photographs explaining how two of the products at issue infringe the claims of the patent, *id.* Exs. B, C, and places Mipow on notice of the relief that Technical LED seeks, including an injunction and damages for willful infringement, *id.* at 4 (prayer for relief). The complaint states a claim for patent infringement, and it is sufficient to support entry of default judgment against Mipow to the extent that Technical LED has shown entitlement to any damages

or other forms of relief.

### D. Damages

#### 1. Reasonable Royalties

A plaintiff that succeeds in showing infringement of its patent is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. "A reasonable royalty is the amount that 'a person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make [, use, or] sell the patented article, in the market, at a reasonable profit.' " *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984) (alterations in original) (citations omitted). A reasonable royalty is measured by the "hypothetical negotiations between willing licensor and willing licensee." *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993) (quoting *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988)). Technical LED argues that a reasonable royalty rate would be of 9% of Mipow's total revenue from the sale of infringing products. Supp'l Br. at 10. Technical LED estimates that it is entitled to $57,789.54 in initial damages. *Id*. (citing Ex. O (past settlement agreements); *Technical LED Intellectual Property, LLC. v Aeon*, No. 18-cv-01847-JSC, ECF Doc. No. 49 (N.D. Cal. Dec. 2, 2019) (report and recommendation applying a 9% reasonable royalty rate)).

Damages awarded on default judgment must be supported by evidence. *See TeleVideo Sys.*, 826 F.2d at 918; *Geddes*, 559 F.2d at 560. To support its request for initial damages, Technical LED issued subpoenas to Amazon and BestBuy requesting sales and revenue data from the products allegedly infringing the '685 patent. Supp'l Br. Ex. 1-A, 1-F.

To determine what percent of that revenue is appropriate in this case, Technical LED refers to its past settlement agreements with other parties accused of infringing the '685 patent. Supp'l Br. at 10; *see also* Supp'l Br. Ex. O.[1] In addition, Technical LED references another default

---

[1] Because the settlement agreements Technical LED provided in Exhibit O were confidential and filed under seal, this report not discuss the specifics of the settlement agreements except to confirm that the 9% royalty rate is within the range of royalties Technical LED has agreed to in the past in cases involving the '685 patent.

7

judgment resulting from infringement of the '685 patent. *Tech. LED Intellectual Prop., LLC v. Aeon Labs LLC*, No. C 18-01847 WHA, 2020 WL 1528446, at *2 (N.D. Cal. Mar. 31, 2020). Based on the settlement agreements provided by Technical LED and the reasoning in *Aeon Labs*, the undersigned concludes that a 9% royalty rate is consistent with past agreements to license the '685 patent.

A district court may look to past settlement agreements with "sufficiently comparable licenses" to determine a reasonable royalty rate for infringement on a given patent. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370–71 (Fed. Cir. 2017). Technical LED provided settlement agreements negotiated with parties who infringed the '685 patent; while not all of the settlement agreements provided listed the amount of revenue at issue, the records revealed a reasonable royalty rate of between 7% and 9% for royalties believed to be on the upper end of the spectrum of revenue from infringing products ("[Believed to Be] Under $250,000"). Supp'l Br. Ex. O; *see also* Supp'l Br. at 10 ("As of the present and for total sales of infringing products between $50,000. and $250,000, the average paid up settlement amounts were between $11,250. and $25,000."). In addition, the same patent was at issue in *Aeon Labs*, 2020 WL 1528446, where the district court found 9% to be a reasonable royalty rate for the '685 patent. Based on the evidence in the record, the undersigned agrees that 9% of the revenue, calculated using the information from Amazon and Best Buy, is a reasonable royalty rate. Mipow netted $574,992.27 in revenue before it was notified of the '685 patent on October 19, 2018. Supp'l Br. Exs. 1-D, 1-H. The undersigned recommends that Technical LED recover $51,749.30, or 9% of Mipow's revenue, in royalty damages for the period before Mipow was notified of the patent. Damages for the period after Mipow was notified of the patent are addressed in the next section of this Report, in connection with the request for enhanced damages.

### 2. Treble Damages

Technical LED further argues that the court should award treble damages because of Mipow's willful infringement of the '685 patent. Mot. at 13. According to Technical LED, Mipow's continued sales of infringing products after being informed of the '685 patent and its default in the current action constitute willful infringement and egregious conduct such that the

district court may award treble damages. *Id.* District courts have discretion to award enhanced damages of "up to three times the amount found or assessed," 35 U.S.C. § 284, for "egregious cases of misconduct beyond typical infringement," typically based on the "subjective willfulness of a patent infringer," *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932–35 (2016).

"[A] willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007), *abrogated on other grounds by Halo*, 136 S. Ct. 1923. The Court in *Halo* explained that "such [enhanced] damages are generally reserved for egregious cases of culpable behavior." 136 S. Ct. at 1932. A court in this district—when granting a motion for default judgment filed by this plaintiff—interpreted *Halo* to require the plaintiff show that the defendant was aware of the patent at issue before infringement could be considered willful. *Aeon Labs*, 2020 WL 1528446, at *2 ("Plaintiff's complaint failed to plead that defendant had engaged in willful infringement *prior* to the start of litigation. Thus, defendant's pre-litigation conduct does not warrant enhanced damages."). The Complaint does not allege that Mipow knew about the '685 patent between 2015, when it began selling infringing products, and 2018, when it was notified of the '685 patent by Technical LED. The undersigned is persuaded by the logic in *Aeon Labs*, and recommends that Technical LED's request for treble damages for the full period of infringing sales be DENIED.

While damages tripling Mipow's total revenue from the infringing products are not appropriate, Mipow's continuing to sell infringing products after Technical LED notified it of the patent presents a different issue, particularly given that Mipow simultaneously declined to participate in the present action. The Federal Circuit has held that when, as here, a defendant "continued to sell the infringing product . . . even after [a] suit for infringement was filed," it is proper for the district court to award additional damages beyond the amount of revenue the defendant netted from selling the infringing product after the date the defendant was notified of their infringement. *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1566–67 (Fed. Cir. 1988), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008); *see also Aeon Labs*, 2020 WL 1528446 at *3 (awarding "double damages" for revenue

9

accrued after the defendant was notified of the plaintiff's patent).

Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo*, 136 S. Ct. at 1930. "Trebling damages is reserved for the cases at the most egregious end of the spectrum." *Polara Eng'g, Inc. v. Campbell Co.*, 237 F. Supp. 3d 956, 994 (C.D. Cal. 2017), *aff'd in part, vacated in part, remanded*, 894 F.3d 1339 (Fed. Cir. 2018) (citing *PPC Broadband, Inc. v. Corning Optical Comm'ns RF, LLC*, No. 511CV761GLSDEP, 2016 WL 6537977, at *9 (N.D.N.Y. Nov. 3, 2016)). "The district court has the discretion to decide whether the case is sufficiently egregious to warrant enhancing damages and to decide the amount of enhancement that is warranted (up to the statutory limit of treble damages)." *WBIP, LLC v. Kohler Co.*, 829 F.3d at 1342.

At least one court has held that willful infringement and subsequent default does not constitute sufficiently egregious conduct such that treble damages are warranted. *See LF Centennial Ltd. v. Inovex Furnishings Corp.*, No. CV 17-05824-AB (MRW), 2019 WL 6655258, at *7 (C.D. Cal. Oct. 2, 2019) (holding that "Plaintiffs must allege Defendant's misconduct was egregious, which is beyond an allegation of knowledge and continued infringement" and granting the plaintiff's renewed motion for a default judgment) (citing *Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring)). The undersigned is persuaded by the reasoning in *LF Centennial* that failing to respond to an action for patent infringement and continuing to infringe after receiving notice of the patent and infringement claim does not rise to the level of egregious conduct that the Supreme Court in *Halo* found necessary to support treble damages. *See Halo* 136 S. Ct. at 1930. Accordingly, the undersigned is not persuaded that Mipow's conduct was egregious.

In cases of willful infringement without more egregious conduct, courts have enhanced damage awards by less than triple the amount of the infringer's revenue. *See, e.g.*, *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1342 (Fed. Cir. 2016) (upholding a district court's decision "not to treble damages, but rather to enhance damages by 50%" after a jury determined that the defendant's infringement was willful); *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1036 (N.D. Cal. 2017) (awarding 30% of the total as compensatory damages when the the

10

defendant's infringement was "insufficient to preclude the award of enhanced damages" but "weigh[ed] in favor of a moderate award"); *Microsoft Corp. v. Corel Corp.*, No. 5:15-CV-05836-EJD, 2018 WL 2183268, at *8 (N.D. Cal. May 11, 2018) (finding "some but not a complete enhancement of damages is warranted" to punish the defendant for willful, but not more egregious, infringement and awarding double damages); *Aeon Labs*, 2020 WL 1528446, at *3 (awarding double damages when "defendant's counsel confirmed receipt of plaintiff's complaint, but defendant nevertheless ignored this litigation and continued to infringe").

The undersigned accordingly recommends that the Court double the reasonable royalty rate for the revenue of sales after October 19, 2018, which totaled $50,588.58. *See* Supp'l Br. Exs. 1-D[2], 1-E, 1-H. Granting damages totaling 18% of the revenue during that period—double the 9% applied to the pre-notification revenue—adds $9,105.94 to the initial royalty damages, bringing the full amount of damages to $60,855.24.

### E.  Injunctive Relief

District courts are authorized by statute to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To obtain injunctive relief, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A plaintiff must also demonstrate a "likelihood of irreparable harm" in the future. *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).

Technical LED cites the Federal Circuit's decision in *Richardson v. Suzuki Motor Co.*, 868

---

[2] Technical LED submitted a record of all Mipow products sold by Amazon during the period in question. The undersigned's calculation includes only those products that infringe on the '685 patent. Those products are listed in Ex. 1-M.

F.2d 1226, 1247 (Fed. Cir. 1989), for the rule that irreparable injury is presumed to result from infringement of a valid patent. Mot. at 14. *Richardson* is no longer good law. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148–49 (Fed. Cir. 2011) (explicitly abrogating *Richardson* in light of the Supreme Court's decision in *eBay*). Under current Federal Circuit precedent, *eBay* has "abolishe[d the] general rule that an injunction normally will issue when a patent is found to have been valid and infringed." *Id.* at 1149.

Technical LED has not explained what irreparable injury it suffers as a result of Mipow's infringement that cannot be compensated by monetary damages. Although *eBay* recognizes the possibility that a patent licensing entity *may* in some circumstances satisfy these elements of the test for injunctive relief, 547 U.S. at 393, Technical LED has presented no evidence that differentiates it from *any* owner of an infringed patent. There is no indication that Technical LED would decline to license its patent to Mipow for a reasonable royalty. While Technical LED's attorney Heidelberger's declaration includes a conclusory assertion that a patent licensor "must . . . maintain flexibility regarding future licensing strategies that may include various restrictions and differing payment schemes," there is no evidence that Technical LED would require any nonmonetary restriction in a potential license agreement with Mipow. The only such restriction that Heidelberger identifies in Technical LED's past license agreements for the '685 patent is that the licenses were "personal, non-transferable licenses," Heidelberger Decl. ¶ 23, but there is no evidence that Mipow ever purported to transfer rights under the '685 patent—rights that it did not possess—to any other party or would do so in the future, or that such unauthorized transfer or licensing would cause harm that could not be compensated by damages. Technical LED also contends that the lack of an injunction here would allow any other manufacturer to infringe the '685 patent without consequence besides retroactive payment of a reasonable royalty. That argument overlooks the deterrent effect of potential treble damages for willful infringement and the fact that an injunction in this case would only bind Mipow and not other manufacturers. Moreover, Technical LED does not explain how royalty damages are any less of a deterrent in this case than in any other case of patent infringement.

In its supplemental brief, Technical LED did not provide any additional evidence that the

present infringement is different from other infringements, that Mipow is using the technology in the '685 patent in a way that would be prohibited by Technical LED's licensing agreement (had Mipow obtained such a license), or that Mipow would have not been entitled to license the technology from the '685 patent had they applied for a license through the proper channels. Technical LED did not advance any additional arguments justifying a finding that it had been irreparably harmed as is necessary for finding Technical LED entitled to a permanent injunction under *eBay*. Granting injunctive relief based on Technical LED's arguments would effectively hold that infringement itself supports such relief, in contravention of the Federal Circuit's holding in *Robert Bosch*.

Because Technical LED has not satisfied the first two elements of the *eBay* test by showing irreparable injury not compensable through monetary damages, the Court need not reach the remaining two elements of the test, which address the balance of hardships and the public interest.[3] The undersigned recommends that Technical LED's motion be DENIED as to injunctive relief.

### F. Attorneys' Fees and Costs

A district court may award attorneys' fees under 35 U.S.C. § 285 in an exceptional case to the "prevailing party." In a default action, the moving party must establish that they are entitled to relief before the district court can consider them a prevailing party for attorneys' fees purposes because "ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1304 (Fed. Cir. 2018) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001)). "[A]n 'exceptional' case is simply one that stands out from others with respect to . . . the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). This includes cases where the

---

[3] In what is either an unusual characterization of LED lightbulbs or boilerplate language that Technical LED's attorney failed to update, Technical LED contends that "the public interest will not be disserved by a permanent injunction because consumer needs for *adult oriented services* can be met by numerous other parties who comply with Plaintiff's licenses." Mot. at 14 (emphasis added). Regardless, the undersigned is not persuaded that this consideration justifies granting an injunction.

13

1  defendant willfully infringes the plaintiff's patent while defaulting on the action for patent
2  infringement. *See ADG Concerns, Inc. v. Tsalevich LLC*, No. 18-cv-00818-NC, 2018 WL
3  4241967, at *13 (N.D. Cal. Aug. 31, 2018) (listing cases), *report and recommendation adopted*,
4  No. 18-cv-00818-JSW, 2018 WL 6615139 (N.D. Cal. Nov. 1, 2018) ("[W]illful infringement, in
5  conjunction with non-participation in litigation, makes a case 'exceptional.'"). Because Technical
6  LED has shown that it is entitled to some relief, and because Mipow's lack of participation in the
7  present action and continued infringement after notice of the '685 patent makes this case an
8  exceptional one, Technical LED is entitled to attorneys' fees.

9  However, the undersigned notes that Technical LED's counsel failed to appear for a case
10 management conference and filed a motion for default judgment replete with typographical errors,
11 boilerplate text (in at least one instance not updated to correspond to the case at hand), and citation
12 to outdated authorities (including at least one decision that has been explicitly overruled). The
13 supplemental brief contained several of the same errors as the original motion, including an
14 important date left blank and several misspellings, including the misspelling of a case name.
15 While the undersigned does not suggest that counsel in this case could not in other circumstances
16 provide the level of service that would be expected for their partner-level billing rates, they have
17 not done so here. The undersigned therefore recommends a reduction of slightly less than one-
18 third of counsel's customary billing rates, resulting in a blended rate of $400 per hour.

19 According to Heidelberger's declaration, the two attorneys worked approximately 43 hours
20 combined on this matter. Heidelberger Decl. ¶ 30. Accordingly, based on the undersigned's
21 recommended reduced rate of $400 per hour, the undersigned recommends that Mipow be liable
22 for a total of $17,200 in attorney's fees. The undersigned also recommends that the district court
23 add $600 in paralegal's fees, Heidelberger Decl. at ¶ 33, because the " 'reasonable attorney's fee'
24 provided for by statute should compensate the work of paralegals, as well as that of attorneys."
25 *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285 (1989). The undersigned recommends
26 awarding Technical LED a total of $17,800 in attorneys' fees and paralegal fees.

27 In addition, Technical LED incurred $9,697.49 in expenses related to the matter.
28 Heidelberger Decl. ¶ 33; *see also* Mot. at 22–23. As the prevailing party, Technical LED is

entitled to taxable costs associated with litigation. 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award . . . costs as fixed by the court."). The undersigned therefore recommends that Technical LED's request for costs also be GRANTED.

### G. Personal Liability

In addition to damages and injunctive relief, Technical LED asks the undersigned to recommend holding Ching Lam, the CEO of Mipow, and Yang Fan, Technical LED's primary contact at Mipow, personally liable for Mipow's infringing conduct. Supp'l Br. at 13–14. Neither person is mentioned in the complaint or named as a defendant, and Ching Lam was not served with the complaint. *See generally* Compl.; Certificate of Service (dkt. 19-13).

Technical LED has not cited any caselaw supporting the proposition that the undersigned should recommend holding non-parties liable for a corporation's infringement. Plaintiffs who seek to hold officers liable for their companies' infringement but did not name them as defendants in the plaintiffs' original complaints generally move to amend their complaints to add the officers as parties. *See, e.g.*, *Randolph-Rand Corp. of N.Y. v. Tidy Handbags, Inc.*, No. 96 CIV 1829, 2001 WL 1286989, at *9 (S.D.N.Y. Oct. 24, 2001) (granting the plaintiff's motion to amend its complaint and add two officers of the defendant corporation as defendants); *Lawman Armor Corp. v. Winner Int'l, LLC*, No. CIV.A. 02-4595, 2003 WL 22902808, at *1 (E.D. Pa. Dec. 10, 2003) (denying the plaintiff's motion to amend its complaint and add two individual defendants); *Sitrick v. FreeHand Sys., Inc.*, No. 02 C 1568, 2004 WL 725306, at *7 (N.D. Ill. Mar. 31, 2004) (granting the plaintiff's motion for leave to amend its complaint to add an officer of the defendant corporation as a defendant in the action). Technical LED has not filed such a motion. Moreover, under Rule 55 of the Federal Rules of Civil Procedure, default judgment may be entered only after a party's default has been entered, which has not occurred for the non-party individuals Technical LED now seeks to hold liable. The undersigned therefore recommends that Technical LED's request to hold Ching Lam and Yang Fan personally liable for Mipow's infringement be DENIED.

## IV. CONCLUSION

For the reasons discussed above, the undersigned recommends that Technical LED's motion be GRANTED IN PART and DENIED IN PART, and that judgment be entered in favor of Technical LED in the amount of $88,352.73.

Dated: April 28, 2020

JOSEPH C. SPERO
Chief Magistrate Judge